OPINION OF THE COURT
Stephen A. Bucaria, J.
Petition for the judicial winding up of the affairs of Emmy Kodiak Developers of Woodbury, LLC is granted.
Petitioner Fassa Corp. holds a one-third membership interest in respondent Emmy Kodiak Developers of Woodbury, LLC (Emmy Kodiak). The other one-third members are Eric Silver-stein and Prasad Realty Corp. The company’s operating agreement provides that its purpose is “to engage in any lawful act or activity for which limited liability companies may be formed.” However, there is no dispute that Emmy Kodiak was formed on April 9, 2008 to acquire a parcel of real property located on Kodiak Drive in Woodbury, improve it with a residence, and resell the property. Emmy Kodiak’s operating agreement provides that Fassa and Prasad shall each contribute $600,000 as initial working capital. The agreement further provides that Silver-stein shall contribute $600,000 for “construction hard costs.” The operating agreement provides that it shall “terminate” at the option of any member upon the giving of 60 days’ notice to the other members.
The operating agreement was prepared by Fassa’s president, Saranjit S. Bindra, who is an attorney. However, rather than drafting an original agreement, Bindra adapted the operating agreement which Silverstein had used in prior real estate deals with Prasad.
Fassa and Prasad each contributed its $600,000 capital, and the property was acquired by the venture. However, Fassa alleges that title to the property was not taken by Emmy Kodiak but instead was taken in the name of “Emmy Kodiak Developers LLC,” a company in which Fassa presumably does not have a membership interest. Fassa alleges that construction of the new home has not begun and, indeed, a building permit has not even been obtained. According to Fassa, Silverstein has delayed commencement of the project because he wishes to sell another property in the area in which he has an interest before marketing Emmy Kodiak’s property.
*784 On July 19, 2010, Fassa served the other members with 60 days’ written notice, purporting to terminate Emmy Kodiak’s operating agreement and dissolve the company. Fassa also demanded access to the books and records at that time. On September 23, 2010, Fassa filed articles of dissolution of Emmy Kodiak with the Department of State.
This proceeding pursuant to Limited Liability Company Law § 703, seeking the judicial winding up of Emmy Kodiak, was commenced on October 6, 2010. Petitioner also requests the appointment of a receiver or liquidating trustee and access to the books and records of the company.
In opposition, respondent argues that termination of the operating agreement did not result in dissolution of the limited liability company. Thus, respondent argues that petitioner must proceed by way of a petition for judicial dissolution of Emmy Kodiak pursuant to Limited Liability Company Law § 702.
The rule that any ambiguities in a contract must be construed against the drafter applies to the operating agreement of a limited liability company (Matter of KSI Rockville v Eichengrun, 305 AD2d 681 [2d Dept 2003]). However, because Bindra appears to have been inexperienced in the formation of an LLC and relied upon a form supplied by Silverstein, it could be argued that Silverstein was the “drafter” of the operating agreement.
Limited Liability Company Law § 701 (a) (2) provides that the company is dissolved upon the “happening of events specified in the operating agreement.” Respondent argues that a member’s giving 60 days’ written notice of termination of the operating agreement is not an “event” specified in the agreement as triggering dissolution of the company. However, Limited Liability Company Law § 417 (a) provides that “[s]ubject to the provisions of this chapter, the members of a limited liability company shall adopt a written operating agreement . . . .” (Emphasis supplied.) Thus, the operating agreement is “the essential LLC document” (Rich, Practice Commentaries, McKinney’s Cons Laws of NY, 2011 Electronic Update, Limited Liability Company Law, at If 3.8). Moreover, Limited Liability Company Law § 702 provides that the court may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business “in conformity with the . . . operating agreement.” In determining whether to grant judicial dissolution, “the court must first examine the limited liability company’s operating agreement” (Matter of 1545 Ocean *785 Ave., LLC, 72 AD3d 121, 128 [2d Dept 2010]). Thus, an operating agreement is essential to determining whether judicial dissolution should be granted.
Where the operating agreement is silent as to the events which will trigger dissolution, the court must look to Limited Liability Company Law § 702 (1545 Ocean at 124). However, if the operating agreement is terminated, there is no basis for the court to determine whether “in the context of the . . . operating agreement,” the stated purpose of the company may be realized or is financially unfeasible (id. at 131). Since the parties could not have intended for Emmy Kodiak to continue without an operating agreement, the court interprets the 60-day notice provision as providing for dissolution of the company. Thus, the court determines that Emmy Kodiak Developers of Woodbury, LLC was dissolved as of September 18, 2010.
Alternatively, the court determines that “disagreement or conflict among the members regarding the means, methods, or finances of the company’s operations is so fundamental and intractable as to make it unfeasible for the company to carry on its business as originally intended” (id. at 133 [Fisher, J., concurring in part and dissenting in part]). Thus, had not Emmy Kodiak dissolved pursuant to the operating agreement, judicial dissolution would have been appropriate.
Pursuant to Limited Liability Company Law § 703, in the event of a nonjudicial dissolution, the court may wind up the company’s affairs upon application of any member. In view of the allegations as to irregularity in the manner by which title was taken, petitioner’s application that the court supervise the winding up of Emmy Kodiak is also granted. However, petitioner’s application that a liquidating trustee be appointed is denied with leave to renew upon proof that title has been acquired by the company.
Pursuant to Limited Liability Company Law § 1102, petitioner is granted the right to inspect and copy the financial books and records of the company.